# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### PECOS DIVISION

| | | |
|---|---|---|
| MAURICIO CONTRERA-FONSECA, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | PE-21-CV-00012-DC-DF |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

## RESPONDENT UNITED STATES' MOTION TO DISMISS

Respondent United States of America[1] moves to dismiss Petitioner's Writ of Habeas Corpus pursuant to Rule 12 of the Federal Rules of Civil Procedure and in support will show the Court as follows:

## I. BACKGROUND

The *pro se* Petitioner, federal inmate Mauricio Contrera-Fonseca, is currently serving a 41-month term of imprisonment for possession of a Schedule II controlled substance in violation of 21 U.S.C. §§ 84l(a)(l) and 841(b)(l)(B)(viii). (Ex. A, Judgment in a Criminal Case, *United States v. Contreras Fonseca*, 3:18-CR-00537 (N.D. Tex. May 24, 2019).) Petitioner is incarcerated at the Reeves County Detention Center III (RCDC III) in Pecos, Texas, and his current projected good conduct time release date is September 20, 2021. (Ex. B, Public Information Inmate Data as of March 29, 2021, p. 3.)

In February 2021, Petitioner filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (ECF No. 1.) He alleges that the Federal Bureau of Prisons (BOP) and RCDC III failed to

---

[1] There is generally only one proper respondent to a habeas petition; this custodian is "the person" with the ability to produce the prisoner's body before habeas court. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004). In this case, the custodian is Warden David Cole of RCDC III, who has immediate custody over Petitioner. The United States of America is not a proper party and should be dismissed.

release him on the "elderly offender [two thirds] release date of January 5, 2021." (ECF No. 1-1, p. 1.) Petitioner seeks a Court order releasing him from imprisonment to the custody of immigration authorities for removal to Mexico.[2] (*Id.*) Petitioner also cites his medical conditions and the spread of COVID-19 as bases for relief. (*Id.*, p. 2.) However, the Court should dismiss this action because Petitioner did not exhaust his administrative remedies and his claims are meritless.

## II. STANDARD OF REVIEW

A motion to dismiss filed under Rule 12(b)(1) challenges a federal district court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *See In re FEMA Trailer Formaldehyde Products Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) (citing *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)); *see also Krim v. pcOrder.com., Inc*., 402 F.3d 489, 494 (5th Cir. 2005) (citations omitted). The party asserting jurisdiction bears the burden of proof. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In reviewing lack of subject matter jurisdiction, this court looks to: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id*., (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1992)).

## III. ARGUMENT AND ANALYSIS

### A. Petitioner Failed to Exhaust His Administrative Remedies.

---

[2] No court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien. 8 U.S.C. § 1252(g). Petitioner requests the Court to do exactly that; to order his transfer into the custody of ICE so that he may be immediately deported to Mexico. Because this request requires the Court to exercise its jurisdiction to review a claim arising from a decision to execute a removal order, it is barred under 8 U.S.C. § 1252(g).

The Court should dismiss this action because Petitioner failed to exhaust his administrative remedies.

It is well-established that "federal prisoners must exhaust 'administrative remedies before seeking habeas relief in federal court under 28 U.S.C. § 2241.'" *Mayberry v. Pettiford*, 74 F. App'x 299, 299 (5th Cir. 2003) (per curiam) (quoting *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam)); *see also Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993); *United States v. Gabor*, 905 F.2d 76, 78 n.2 (5th Cir. 1990). A federal inmate's failure to pursue administrative remedies consistent with the procedures provided by the prison system where he is incarcerated constitutes procedural default, warranting dismissal of a § 2241 habeas petition. *Sanchez v. Joslin*, 3:06-CV-138, 2006 WL 2934278, *2-3 (N.D. Tex. Oct. 12, 2006) *aff'd sub nom*, *Alaniz Sanchez v. Joslin*, 258 F. App'x 713, (5th Cir. 2007) (per curiam); *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632-34 (2d Cir. 2001); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996); *Nigro v. Sullivan*, 40 F.3d 990, 993-97 (9th Cir. 1994).

A review of relevant administrative remedy procedures applicable to federal inmates housed at RCDC III indicates that, depending upon the nature of the complaint, a grievance is either handled exclusively by RCDC III officials or it may be appealed to BOP officials in the BOP's Privatization Management Branch (PMB) and Office of General Counsel. (Ex. D, RCDC III Policy and Procedure Manual 12.006, *Administrative Remedy Procedure*, pp. 1-3.) Matters appealable to the BOP upon completion of the local grievance procedures include sentence computation issues, designation issues, and classification issues. (*Id.*, p. 2.)

Here, Petitioner's claims raise a designation issue.[3] Thus, after completing local grievance

---

[3] The statutes implicated in this habeas petition, 18 U.S.C. § 3582 and 34 U.S.C. § 60541, address the BOP's authority to place federal inmates in home detention to serve the remainder of a term of imprisonment. Therefore, Petitioner's claims relate to home detention as a designation

processes, Petitioner is required to appeal to the BOP through the Administrator of PMB. (*Id.*, pp. 4, 6.) If dissatisfied with the PMB Administrator's response, Petitioner must appeal to the BOP's General Counsel. (*Id.*) However, BOP electronic inmate administrative records do not indicate that Petitioner filed any administrative remedy appeals with the PMB Administrator or the General Counsel. (Ex. C, Declaration of Darrin C. Scott.)

Moreover, Petitioner has offered no explanation regarding the exhaustion of administrative remedies as inappropriate or futile. Exceptions to the exhaustion requirement apply only in extraordinary circumstances, and Petitioner bears the burden of proving the inappropriateness or futility of administrative review. *Fuller*, 11 F.3d at 62 (citing *DCP Farms v. Yeutter*, 957 F.2d 1183, 1188 (5th Cir.), *cert denied*, 506 U.S. 953 (1992); *Gardner v. Sch. Bd. Caddo Par.*, 958 F.2d 108, 112 (5th Cir. 1992)).

Accordingly, because Petitioner failed to demonstrate extraordinary circumstances that waive the exhaustion requirement, the Court should dismiss the petition for failure to exhaust administrative remedies.

### B.  Petitioner Cannot Raise Conditions Of Confinement Under Section 2241.

Even if Petitioner exhausted his administrative remedies, the Court lacks subject matter jurisdiction to consider his claims.

"Habeas corpus is an extraordinary remedy 'reserved for transgressions of constitutional rights and for a narrow range of injuries that … if condoned, [would] result in a complete miscarriage of justice.'" *Neira v. U.S. Bureau of Prisons*, EP-18-CR-2399, 2020 WL 6928410, at *2 (W.D. Tex. Nov. 24, 2020) (quoting *Kinder v. Purdy*, 222 F.3d 209, 213 (5th Cir. 2000)

---

of a location for serving his term of imprisonment, not his release from the term of imprisonment itself. *See infra*, pp. 4-7.

(internal citation omitted). Habeas corpus is applicable only when the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). As the Court of Appeals for the Fifth Circuit has explained, "a habeas petition 'is the proper vehicle to seek release from custody,' while a civil rights suit pursuant to 42 U.S.C. § 1983 for a state prisoner or under *Bivens*[4] for a federal prisoner is 'the proper vehicle to attack unconstitutional conditions of confinement and prison procedures.'" *Melot v. Bergami*, 970 F.3d 596, 599 (5th Cir. 2020) (quoting *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997)). "Simply stated, habeas is not available to review questions unrelated to the cause of detention. Its sole function is to grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose." *Pierre v. United States*, 525 F.2d 933, 935-36 (5th Cir. 1976); *see also Nel v. Cole*, PE-20-CV-0048, 2020 WL 6535787 (W.D. Tex. Oct. 31, 2020). Thus, "if a favorable determination of the prisoner's claim would not automatically entitle him to accelerated release, then the proper vehicle is a civil rights suit," not a § 2241 habeas petition. *Pierre*, 525 F.2d at 935-36 (citing *Carson*, 112 F.3d at 820-21).

Here, Petitioner seeks "a change in confinement from a prison facility to home detention," and "therefore involves his conditions of confinement." *Melot*, 970 F.3d at 599. Under the First Step Act of 2018's revisions to the Second Chance Act of 2007, 34 U.S.C. § 60541 now provides that an inmate can be "remov[ed]" from a BOP facility and placed on "home detention until the expiration of the prison term to which the offender was sentenced." 34 U.S.C. § 60541(g)(1)(A). In an unpublished decision, the Fifth Circuit found that an inmate's request might "sound in habeas" because a favorable ruling from the district court to "release to home confinement in the

---

[4] *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

context of a global pandemic" would accelerate his release. *Cheek v. Warden of Fed. Med. Ctr.*, 835 F. App'x 737, 740 (5th Cir. 2020) (per curiam). However, the Court did not hold that the district court possessed authority to grant habeas corpus. The Court stated that "the pandemic did not create judicial authority to grant home confinement." *Id*. Here, Contrera-Fonseca has not exhausted his administrative remedies and "[w]ithout a denial from the BOP, there is nothing for [the Court] to review. [Petitioner] presents no indication that the BOP denied him or others, appropriately or otherwise, a request for home confinement." *Id.*; *but see, Rice v. Gonzalez*, 985 F.3d 1069, 1070 (5th Cir. 2021) ("[T]hat [a state prisoner] might more likely be exposed to COVID-19 during confinement, and that he may have certain common underlying health conditions, taken together do not impugn the underlying legal basis for the fact or duration of his confinement.") Consequently, Petitioner's claims are not cognizable under 28 U.S.C. § 2241 and, therefore, the Court should dismiss the petition for lack of subject matter jurisdiction.

### C. Petitioner's Additional Claims Are Without Merit.

#### 1. *Elderly Offender Release*.

Petitioner alleges that he qualified for release on the "elderly offender two thirds" date in January 2020. (ECF No. 1-1, p. 1.) Petitioner's claims fail because he does not meet the statutory eligibility criteria of an elderly offender. Petitioner is 37 years of age and cannot show that he is an "eligible terminally ill offender."

The date of release is a computation of the earliest date that the BOP considers releasing a federal inmate from a correctional facility to home detention to serve the remainder of a federal term of imprisonment. *See* 18 U.S.C. § 3624(c)(2). Specifically, the BOP's statutory authority to release an inmate to home confinement is generally limited to "the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." *Id.* Section 60541 authorizes a home detention

pilot program to permit potential home detention in excess of § 3582(c)(2)'s limits for elderly or terminally ill federal inmates. 34 U.S.C. § 60541. Specifically, § 60541(g) authorizes "a pilot program to determine the effectiveness of removing eligible elderly offenders and eligible terminally ill offenders from [BOP] facilities and placing such offenders on home detention until the expiration of the prison term to which the offender was sentenced." 34 U.S.C. § 60541(g)(1)(A). Section 60541(g) also authorizes the United States Attorney General to waive § 3624(c)(2)'s temporal limitation on pre-release home confinement placement. 34 U.S.C. § 60541(g)(1)(c). An "eligible elderly offender" is a federal inmate in the custody of BOP:

> (i) who is not less than 60 years of age;
>
> (ii) who is serving a term of imprisonment that is not life imprisonment based on conviction for an offense or offenses that do not include any crime of violence, sex offense, offense described in 18 U.S.C. § 2332(b)(g)(5)(B) or offense under. 18 U.S.C. § 37, and has served 2/3 of the term of imprisonment to which the offender was sentenced;
>
> (iii) who does not have any prior conviction for a federal or state crime of violence, sex offense, offense described in 18 U.SC. § 2332(b)(g)(5)(B) or offense under 18 under 18 U.S.C. § 37;
>
> (iv) who has not been determined by the BOP, on the basis of information the BOP uses to make custody classifications, and in the sole discretion of the BOP, to have a history of violence, a history of engaging in conduct constituting a sex offense, or a history of conduct constituting an offense described in. 18 U.S.C. § 2332(b)(g)(5(b) or offense under 18 U.S.C. § 37; and
>
> (v) who has not escaped, or attempted to escape, from a BOP institution;
>
> (vi) for whom the BOP has determined that release to home dentition under this section will result in a substantial net reduction of costs to the Federal Government; and
>
> (vii) who has been determined by the BOP to be at no substantial risk of engaging in criminal conduct or of endangering any person or the public if released to home detention.

34 U.S.C. §§ 60541(g)(5)(A)(i)-(vii).

Furthermore, to be considered an "eligible terminally ill offender" for participation in the pilot program under § 60541, a medical doctor approved by the BOP must determine that the inmate requires care at a nursing home, intermediate care facility, or assisted living facility, or must diagnose the inmate with a terminal illness. 34 U.S.C. § 60541(g)(5)(D)(iii). While an eligible terminally ill offender need not be at least 60 years of age and need not have served two thirds of the term of imprisonment, all other eligibility criteria applicable to an eligible elderly offender must be met. 34 U.S.C. §§ 60541(g)(5)(D)(i); 60541(d)(5)(D)(ii).

Here, even liberally construing the habeas petition as an effort to initiate a *Bivens* suit or cognizable in a habeas corpus action, Petitioner's claims nonetheless fail because he does not meet statutory eligibility criteria for pilot program participation: Petitioner is 37 years old, and his projected release date is September 20, 2021. (Ex. B, p.1; Ex. E, pp. 1-2.) As such, he is not 60 years of age, nor will he be 60 by the time his current term of imprisonment expires and, therefore, he does not qualify for program participation as an "eligible elderly offender."

Although Petitioner allegedly suffers from several maladies, he does not claim that any of these conditions are terminal or require care at a nursing home, intermediate care facility, or assisted living facility. (*See* ECF No. 1-1, p. 2.) Moreover, Petitioner does not allege that a BOP-approved medical doctor has determined that his conditions are terminal or require care at a nursing home, intermediate care facility, or assisted living facility. As such, Petitioner also does not qualify for program participation as an "eligible terminally ill offender."[5]

Petitioner's age does not qualify him for participation in the home detention pilot program

---

[5] Even if Petitioner satisfied the mandatory statutory eligibility criteria of § 60541(g)(5)(A) or § 60541(g)(5)(D), his participation in the program would not be required. The United States Attorney General is not required to place all eligible offenders in the program, but "may release some or all" for program participation. 34 U.S.C. § 69541(g)(1)(B).

authorized by 34 U.S.C. § 60541(g). Therefore, because Petitioner does not meet the statutory placement criteria, his claims should be dismissed.

### 2. Compassionate Release.

Petitioner seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). This request should be denied because Petitioner did not submit a request to file for compassionate release in the district court. Additionally, Petitioner has been vaccinated against COVID-19 and, therefore, does not present an extraordinary and compelling reason permitting relief.

Petitioner's request for compassionate release is based on his medical condition and fear of COVID-19. (*See* ECF No. 1-1, p. 3.) ("I also ask this Honorable Court to consider empa[thy] and compassion under the Care [sic] act."). He allegedly suffers from high blood pressure, high cholesterol, hemorrhoids, back pain, and fears that he is obese or diabetic. (*See* ECF No. 1-1, p. 2.) Petitioner's BOP medical records, which are filed under seal as Exhibit E, reveal that, as of December 2020, Petitioner presents high blood pressure and a body mass index (BMI) of 38.2 percent.[6]

In the First Step Act of 2018 (the "First Step Act"), Pub L. No. 115-391, 132 Stat. 5194, 5239, Congress amended 18 U.S.C. § 3582(c)(1)(A) to allow a prisoner to file a motion for compassionate release on his own behalf. *See, e.g., United States v. York*, 3:11-CR-76, 2019 WL 3241166, at *4 (E.D. Tenn. July 18, 2019) (citing 18 U.S.C. § 3582(c)(1)(A) (2017)). The First Step Act modified § 3582(c)(1) to "increase[e] the use and transparency of compassionate release." Pub. L. No. 115-391, 132 Stat. 5194, 5239. Section 3582(c)(1)(A) provides in pertinent part:

---

[6] According to the Centers for Disease Control and Prevention (CDC) guidelines, Petitioner is BMI is classified as overweight or obese. *See* CDC, *Adult BMI Calculator*, (visited May 3, 2020), https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html.

(c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction …

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission …

Further, 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." In the policy statement as incorporated in U.S.S.G. § 1B1.13, the Commission identifies the "extraordinary and compelling reasons" that may justify compassionate release. The guideline and the application note provide as follows:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor

10

> cancer, amyotrophic lateral sclerosis (ALS), end-stage organ
> disease, and advanced dementia.
>
> (ii)    The defendant is—
>
>   (I)    suffering from a serious physical or medical condition,
>
>   (II)   suffering from a serious functional or cognitive impairment,
>          or
>
>   (III)  experiencing deteriorating physical or mental health because
>          of the aging process, that substantially diminishes the ability
>          of the defendant to provide self-care within the environment
>          of a correctional facility and from which he or she is not
>          expected to recover.
>
> (B)    Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is
>        experiencing a serious deterioration in physical or mental health because of
>        the aging process; and (iii) has served at least 10 years or 75 percent of his
>        or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13, app note 1(A), (B).[7]

In general, the defendant has the burden to show circumstances meeting the test for compassionate release. *See, e.g.*, *United States v. Neal*, 2:08-CR-00628, 2020 WL 5993290, at *4 (E.D. Pa. Oct. 9, 2020); *United States v. Adeyemi*, 470 F. Supp. 3d 489, 512 (E.D. Pa. 2020). As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (citations omitted).

---

[7] The Fifth Circuit Court of Appeals has explained that the policy statement in U.S.S.G. § 1B1.13, although not dispositive, "informs [a court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release." *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021). A subsequent Fifth Circuit panel held that "neither the policy statement nor the commentary to it binds a district court addressing a prisoner's own motion" for a sentence reduction. *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021). Any argument that *Shkambi* precludes consideration of the policy statement would be inaccurate. The prior panel opinion in Thompson, which recognizes that the policy statement informs the courts' analyses of sentence-reduction motions, governs. *See United States v. Smith*, 354 F.3d 390, 399 (5th Cir. 2003) (explaining that prior panel decisions control). The United States maintains that the commentary is authoritative and binding.

*i. Exhaustion Requirement*

Petitioner did not exhaust his administrative remedies before requesting compassionate release and, thus, there is no basis for the Court to grant his request.

"'A compassionate release request is not a matter of illegal or unconstitutional restraint.' Hence, a petition under § 2241 is not the proper means by which [p]etitioner may obtain the relief he seeks." *Ordonez v. Cole*, PE-20-cv-00038, 2020 WL 5541082 at *6 (W.D. Tex. Sept. 14, 2020) (quoting *Figueroa v. Chapman*, 347 F. App'x 48, 50 (5th Cir. 2009)). Nonetheless, "a defendant seeking compassionate relief must fully exhaust all administrative rights to appeal, which statutorily requires him to present the request to the BOP before seeking a resolution in federal courts." *United States v. Rivas*, 833 F. App'x 556, 557 (5th Cir. 2020) (per curiam).

Here, the appropriate means for Petitioner to seek such relief is to submit a compassionate release request to the warden, and then to file a sentence reduction motion in his sentencing court should the warden deny the request or should 30 days lapse without a decision from the warden. 18 U.S.C. § 3582(c)(1)(a). There is no indication that Petitioner exhausted the available administrative remedies, and therefore, his request should be denied.

*ii. COVID-19*

Petitioner also claims he fears contracting COVID-19 at RCDC III. (*See* ECF No. 1-1, p. 2.)

A federal prisoner seeking a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)(i) must establish an "extraordinary and compelling reason[]," as that term is defined in Application Note 1 to U.S.S.G. § 1B1.13.1, The risk of COVID-19 by itself is not an extraordinary and compelling reason allowing compassionate release. *See United States v. Wilson*, 848 F. App'x 112, 113 (5th Cir. 2021) (concurring with district court's decision that risk of COVID, even in the presence of

some medical conditions, does not meet the extraordinary and compelling standard); *see, e.g.,* *United States v. Taylor*, CV 3-269, 2020 WL 3447761, at *6 (D. Md. June 23, 2020) ("Fear of contracting the novel coronavirus while incarcerated is not sufficient reason for granting compassionate release" absent individual special circumstances."); *United States v. Clark*, 451 F. Supp. 3d 651, 657 (M.D. La 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13.23."); *United States v. Warren*, CR 15-255, 2020 WL 4923677, at *2 (E.D. La. Aug. 21, 2020) ("Indeed, if general concerns about COVID-19 constituted extraordinary and compelling reasons, all incarcerated individuals would qualify for compassionate release.").

The fact of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not alone provide a basis for a sentence reduction. The guideline policy statement describes specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. The Third Circuit has therefore held that: "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) (per curiam) ("[T]he existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit."); *see also United States v. Hegyi,* 2:17-CR-82, 2020 WL 7090710, at *2 (N.D. Ind. Dec. 4, 2020) ("the presence of COVID-19 in a prison, even in large numbers, does not justify compassionate release on its own.").

The United States acknowledges, however, that an inmate who has not been offered a vaccine, who presents a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19, and who is not expected to recover from that condition, presents "a serious physical or medical condition … that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), because the defendant may be less able to protect himself against an unfavorable outcome from the disease. *See United States v. Tartaglione*, CR 15-491, 2020 WL 3969778, at *5-6 (E.D. Pa. July 14, 2020) ("a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held.") (quoting *United States v. Somerville*, 463 F. Supp. 3d 585, 597 (W.D. Pa. 2020)).

The CDC's list of risk factors was most recently updated on March 29, 2021. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. It reports a list of conditions that "can make you more likely to get severely ill from COVID-19." An inmate who has not been offered a vaccine, who presents a condition on that list, presents an "extraordinary and compelling reason" allowing consideration of compassionate release.[8]

---

[8] Before March 29, 2021, the CDC presented two separate lists of conditions that either definitively entailed a greater risk of severe illness or "might" entail a greater risk of severe illness. Those "might" conditions were asthma (moderate-to-severe); cerebrovascular disease; cystic fibrosis; hypertension; immunocompromised state from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; neurologic conditions, such as dementia; liver disease; overweight; pulmonary fibrosis; thalassemia; and type 1 diabetes mellitus. At that time, the United States maintained – and most courts agreed – that inmates with conditions on the "might" list did not present an extraordinary basis for relief. *See, e.g.*, *United States v. Durham*, 3:18CR-251, 2020 WL 5577884, at *2 (W.D.N.C. Sept. 17, 2020)

Here, although Petitioner presents the risk factors of obesity and high blood pressure, he has been vaccinated against COVID-19. (Ex. E, pp. 2-3.) He therefore cannot no longer present an "extraordinary and compelling reason" for compassionate release because BOP provided, and Petitioner accepted, both doses of the COVID-19 vaccine produced by Pfizer. (Ex. E, pp. 4-7.) As a result, Petitioner's request for compassionate release should be denied.

As the United States has explained, the pertinent guideline policy statement treats as an "extraordinary and compelling" circumstance "a serious physical or medical condition … that substantially diminishes the ability of the Petitioner to provide self-care within the environment of a correctional facility and from which he she is not expected to recover." U.S.S.G. § 1B1.13 app. note 1(A)(ii). The United States during the pandemic has acknowledged that an unvaccinated inmate who presents a medical risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19, and who is not expected to recover from that condition, presents an extraordinary and compelling circumstance under that provision. That circumstance no longer exists in this case. Petitioner has received a vaccine approved by the United States Food and Drug Administration (FDA) for emergency use based on its conclusion that, in extensive testing, the

---

; *United States v. Moldover*, CR 14-637, 2020 WL 6731111, at *9 (E.D. Pa. Nov. 13, 2020) ("District courts have routinely denied motions for compassionate release based on allegations of only potential COVID-19 risk factors, including asthma and hypertension.").

In the March 29 revision, the CDC merged the two lists without extensive explanation. The CDC also presents a page with information for healthcare providers, which discusses the evidentiary basis for designating each risk factor and indicates that there remains less extensive support for drawing conclusions regarding most conditions formerly listed as "might" factors. *See* https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html. The United States nevertheless continues to follow CDC guidance and therefore relies on the CDC's expanded list to define what constitutes an "extraordinary and compelling" basis for consideration of compassionate release of an inmate who has not been offered a vaccine.

It also bears noting that although age is not listed as a separate risk factor, the CDC has emphasized that it is an important indicator of risk. The CDC page regarding risk factors, updated on March 29, 2021, states: "More than 80% of COVID-19 deaths occur in people over age 65, and more than 95% of COVID-19 deaths occur in people older than 45." *Id.*

vaccine was 95% effective in preventing COVID-19 infection, including in participants with medical comorbidities associated with high risk of severe COVID-19 disease. *See* FDA Decision Memorandum, Pfizer – Dec. 11, 2020, https://www.fda.gov/media/144416/download.

Various studies continue to confirm the efficacy of the vaccines. For instance, on April 1, 2021, Pfizer reported its follow-up study on the 44,000 participants in its Phase 3 trial. It found that the vaccine, based on mRNA technology (like the Moderna vaccine), was 91.3% effective against COVID-19, measured seven days through up to six months after the second dose, across age, gender, race, and ethnicity demographics, across participants with a variety of underlying conditions, and during a period through March 13, 2021, when variants were circulating. Pfizer further found that the vaccine was 100% effective against severe disease as defined by the CDC and 95.3% effective against severe disease as defined by the FDA. *See* https://www.businesswire.com/news/home/20210401005365/en/.

The CDC likewise recently reported the effectiveness of the Pfizer and Moderna vaccines in preventing infection during the same period and concluded that its extensive data "reinforce CDC's recommendation of full 2-dose immunization with mRNA vaccines. COVID-19 vaccination is recommended for all eligible persons [.]" "Interim Estimates of Vaccine Effectiveness," https://www.cdc.gov/mmwr/volumes/70/wr/mm7013e3.htm Mar. 29, 2021).

Given these figures, Petitioner accepted effective "self-care" against the virus and does not present any extraordinary and compelling reason allowing compassionate release. As one court recently summarized:

> Here, Defendant is not at high risk of contracting severe COVID-19 because Defendant will have received both does of the Pfizer vaccine by the time he would be released. According to clinical trials published on the CDC's website, the Pfizer vaccine was 95% effective at preventing COVID-19 in people who did not have a previous infection. More importantly for purposes of this motion, clinical trials have shown that the Pfizer vaccine is 100% effective at preventing severe disease.

Therefore, because Defendant will be at little-to-no risk of severe COVID-19 shortly after receiving his second Pfizer dose, there are no "extraordinary and compelling reasons" justifying a compassionate release in this case. *See United States v. Miller*, No. 13-20928, 2021 WL 1115863, at \*2 (E.D. Mich. Mar. 24, 2021) ("The court is aware of no scientifically derived evidence showing that severe complications or death from COVID-19 is likely, or even possible, after an individual has received a full vaccination regimen. Over forty million individuals have been fully vaccinated in the United States, and the court does not know of a single confirmed death of a fully vaccinated individual from COVID-19.").

*United States v. Groom*, 2:17-CR-159, 2021 WL 1220225, at \*2 (S.D. Ohio Apr. 1, 2021).

Recent decisions overwhelmingly agree with this conclusion. *See, e.g.*, *United States v. Cortez*, CR180085801, 2021 WL 689923 (D. Ariz. Feb. 23, 2021); *United States v. Godoy-Machuca*, CR18008, 2021 WL 961780, at \*2 (D. Ariz. Mar. 15, 2021) (defendant also recovered from COVID-19, providing an additional measure of protection); *United States v. Grummer*, 2021 WL 568782, at \*2 (S.D. Cal. Feb. 16, 2021) (denying compassionate release to defendant with several chronic medical conditions when defendant had been fully vaccinated against COVID-19); *United States v. Poupart*, 3:11CR116, 2021 WL 917067, at \*1 (D. Conn. Mar. 10, 2021); *United States v. Shepard*, CR 07-85, 2021 WL 848720, at \*5 (D.D.C. Mar. 4, 2021); *United States v. Stewart*, CR 17-00488, 2021 WL 1011041, at \*2 (D. Haw. Mar. 16, 2021); *United States v. Decano*, CR 07-00608, 2021 WL 1095979, at \*6 (D. Haw. Mar. 22, 2021); *United States v. Johnson*, 3:02-CR-00068, 2021 WL 863754, at \*2 (W.D. Ky. Mar. 8, 2021); *United States v. Jones*, CR 14-154, 2021 WL 1172537, at \*2 (E.D. La. Mar. 29, 2021); *United States v. McGill*, CR 15-0037, 2021 WL 662182, at \*5 (D. Md. Feb. 19, 2021); *United States v. Gabbard*, CR 18-20039, 2021 WL 1037724, at \*3 (E.D. Mich. Mar. 18, 2021); *United States v. Williams*, CR 16-251, 2021 WL 1087692, at \*3 (D. Minn. Mar. 22, 2021); *United States v. Burks*, CR113694, 2021 WL 1291935, at \*2 (D. Minn. Apr. 7, 2021); *United States v. Wakefield*, 1:19-CR-00095, 2021 WL 640690, at \*3 (W.D.N.C. Feb. 18, 2021) (defendant presents obesity, diabetes, and

hypertension, but he previously tested positive, and has received the first dose; "Because he has already contracted the virus and recovered without complication, and because he is in the process of being vaccinated, the Defendant cannot meet his burden of establishing that his COVID-19 risk is an extraordinary and compelling reason for his release."); *United States v. Williams*, 5:01-CR-00012, 2021 WL 966028, at *3 (W.D.N.C. Mar. 15, 2021); *United States v. Kosic*, 18 CR 30, 2021 WL 1026498, at *2 (S.D.N.Y. Mar. 17, 2021) (also rejected other objections based on conditions at Fort Dix, where the inmate received the first dose of the Moderna vaccine, and also recovered from COVID-19); *United States v. Cardoza*, 3:17-CR-00438, 2021 WL 932017, at *1 (D. Or. Mar. 11, 2021); *United States v. Roper*, CR 16-335, 2021 WL 963583, at *4 (E.D. Pa. Mar. 15, 2021) ("The risk posed to an inoculated Mr. Roper is not an extraordinary and compelling reason for his release."); *United States v. Stiver*, CR 17-64, 2021 WL 1110593, at *1 (W.D. Pa. Mar. 23, 2021); *United States v. Beltran*, 6:16-CR-00004, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (denying compassionate release to defendant with underlying health conditions when defendant had received first vaccine dose); *United States v. Ballenger*, CR16-5535, 2021 WL 308814, at *4 (W.D. Wash. Jan. 29, 2021); *see also United States v. Lipscomb*, 2:18-CR-34, 2021 WL 734519, at *2 (M.D. Fla. Feb. 25, 2021) (inmate received both doses; "What's more, this demolishes Lipscomb's conclusory contention BOP is not taking adequate precautions. Currently, tens—if not hundreds—of millions of Americans are scurrying to figure out how to get a vaccine. Yet Lipscomb already received both doses. This does not suggest BOP is taking COVID-19 lightly or not protecting Lipscomb.").

Federal inmates have contested this consensus, pointing out that the vaccines may not be 100% effective, that they were not tested in a congregate setting, that they may not be effective for all individuals, and that variants may emerge that render the vaccines ineffective. Courts have

almost uniformly rejected these arguments. One explained:

> Given that Rodriguez is or will soon be fully vaccinated against COVID-19, the Court concludes that Rodriguez's obesity and hypertension are not extraordinary and compelling reasons justifying his release …. Rodriguez argues that it is unclear how effective the Pfizer vaccine is, how long its effects will last, and whether it protects against the COVID variants, leaving a risk that he could still become seriously ill. Although all evidence to date is that the Pfizer vaccine is very effective, no one claims that it is 100 percent effective, and thus there remains a small risk that Rodriguez could be infected by COVID-19 and become seriously ill from that infection. But every prisoner runs a small risk of lots of serious medical conditions (including COVID-19). The small risk that Rodriguez may contract COVID-19 and become seriously ill is simply too speculative to justify his release.

*United States v. Rodriguez*, 15-CR-0254, 2021 WL 1187149, at *1-2 (D. Minn. Mar. 30, 2021).

Accordingly, the prevailing view is that "absent some shift in the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)." *United States v. Smith*, 17-CR-20753, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021); *see also, e.g.*, *United States v. White*, 15-CR-20040, 2021 WL 964050, at *2 (E.D. Mich. Mar. 15, 2021) (denied after first dose, and rejects speculation regarding future effectiveness against variants: "Defendant is free to renew his motion should more information emerge suggesting that the Pfizer vaccine cannot protect him from new imminent strains of COVID-19. However, at this time, the Court does not find extraordinary and compelling circumstances based on that speculation."); *United States v. Kariblghossian*, 2:13-CR-00318, 2021 WL 1200181, at *3 (C.D. Cal. Mar. 29, 2021) ("Nonetheless, at this time, the available scientific evidence suggests that the Pfizer vaccine is highly effective against known variants of the SARS-COV-2 virus that causes COVID-19) (citing CDC studies and Yang Liu, et. al., Neutralizing Activity of BNT162b2-Elicited Serum, The New England Journal of Medicine (March 8, 2021), https://www.nejm.org/doi/full/10.1056/NEJMc2102017?query=featured_home)); *United States v. Goston*, 15-20694, 2021 WL 872215,

at *3 (E.D. Mich. Mar. 9, 2021) (finding the potential that the Pfizer vaccine does not protect against variants inadequate to justify release); *United States v. Brown*, 16-CR-436, 2021 WL 1154207, at *3 (S.D.N.Y. Mar. 26, 2021) (speculation about variants is insufficient); *United States v. Del Rosario Martinez*, 19CR5218, 2021 WL 956158, at *3 n.10 (S.D. Cal. Mar. 10, 2021) (declining to rely on a frequently submitted declaration of Dr. Tara Vijayan, stating, "with all due respect to Dr. Vijayan's expertise and experience, the Court declines to contribute in any fashion to public skepticism regarding the safety and efficacy of the available COVID-19 vaccines or to second-guess the Food and Drug Administration's findings and decision to issue Emergency Use Authorizations for COVID-19 vaccines 'for which there is adequate manufacturing information to ensure its quality and consistency.' The Path for a COVID-19 Vaccine from Research to Emergency Use Authorization, available at www.FDA.gov/COVID19vaccines#FDA VaccineFacts (last visited 3/9/2021).").

It is possible that the scientific consensus may shift dramatically if vaccine-resistant variants emerge or the vaccines prove less efficacious than studies to date suggest. If those possibilities materialize, nothing would prevent Petitioner from filing a proper motion for compassionate release. *United States v. Singh*, 4:15-CR-00028, 2021 WL 928740, at *3-4 (M.D. Pa. Mar. 11, 2021) ("Indeed, the majority of CDC recommendations for fully vaccinated people indicate that the CDC's primary concern is not with fully vaccinated individuals being hospitalized due to COVID-19, but with such individuals potentially spreading the virus to unvaccinated individuals .... It is, of course, possible that future research will demonstrate that current, or future, COVID-19 variants mitigate the effectiveness of the Moderna vaccine to such an extent that the vaccine no longer provides individuals with effective protection. However, Singh has not demonstrated that such is the case today and, it bears emphasizing, the burden falls upon Singh to

demonstrate that compassionate release is warranted.").

At this time, this Court's assessment should be driven by the prevailing scientific view that vaccination makes extremely rare, and possibly eliminates entirely, the risk of severe disease from the virus. This unprecedented period of time in which the threat of the virus sometimes gives rise to "extraordinary and compelling" circumstances should come to an end as inmates like Petitioner are vaccinated. For this reason, compassionate release sentence reductions based on medical conditions should again be limited to extraordinary conditions that are terminal or severely limit an inmate's ability to function in a correctional setting. *See, e.g.*, *Willis*, 382 F. Supp. 3d at 1188 (relief is "rare" and "extraordinary"); *United States v. Lisi*, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020), reconsideration denied, 15 CR 457, 2020 WL 1331955 (S.D.N.Y. Mar. 23, 2020) ("a defendant's medical condition must be one of substantial severity and irremediability."); *United States v. Polnitz*, 17-CR-201, 2020 WL 1139836, at *2 (E.D. Wis. Mar. 9, 2020), *adhered to on reconsideration*, 17-CV-201, 2020 WL 3129643 (E.D. Wis. June 12, 2020) (must be extraordinary; "Many inmates suffer from pain and mental illness."). At present, Petitioner does not present any such condition.

Petitioner's request for compassionate release should therefore be denied.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Respondent United States respectfully asks that this Court dismiss Petitioner's habeas petition.

Respectfully submitted,

**ASHLEY C. HOFF**
UNITED STATES ATTORNEY

/s/ Colton Tully-Doyle
**COLTON TULLY-DOYLE**
Assistant United States Attorney
WA State Bar No. 54643
700 E. San Antonio, Ste. 200
El Paso, TX 79901
Office: (915) 534-6555
Facsimile: (915) 534-3490
Email: Colton.Tully-Doyle@usdoj.gov
*Attorneys for Respondent*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of May, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and I hereby certify that I have mailed the foregoing document by certified mail return receipt requested to the following non-CM/ECF participant: Mauricio Contrera-Fonseca, RCDC III, P.O. Box 2038 Pecos, Texas 79772, *Pro Se Petitioner*.

/s/ Colton Tully-Doyle
**COLTON TULLY-DOYLE**
Assistant United States Attorney

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | | |
|---|---|---|
| **MAURICIO CONTRERA-FONSECA,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **PE-21-CV-00012-DC-DF** |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| **Respondent.** | § | |

**O R D E R**

On this date, came on to be considered Respondent's Motion to Dismiss in the above-entitled and numbered cause. The Court is of the opinion that said motion should be and is hereby GRANTED.

IT IS, THEREFORE, ORDERED that Respondent's Motion to Dismiss, be and is hereby GRANTED.

SIGNED and ENTERED this _____ day of _____, 2021.

_____
**DAVID COUNTS**
**UNITED STATES DISTRICT JUDGE**